**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Star Mountain Plan Trust,

Plaintiff,

v.

Titan Mining (US) Corporation, et al.,

Defendants.

No. CV-21-01002-PHX-GMS

**ORDER**

Before the Court is a Motion to Withdraw the Reference of Adversary Proceeding (Doc. 2) brought by Defendant Titan Mining (US) Corporation, a Delaware corporation, and Titan Mining Corporation, a British Columbia, Canada corporation (the "Titan Defendants"). For the following reasons, the Titan Defendants' motion is denied.

**BACKGROUND**

This case comes to the Court from the United States Bankruptcy Court for the District of Arizona, where Jared Parker, trustee ("Trustee") for the Star Mountain Plan Trust ("Plaintiff") has brought an adversary proceeding against the Titan Defendants. *See* Second Amended Complaint, *Parker v. Titan Mining Corp. et al. (In re Star Mountain Resources, Inc.)*, No. 19-ap-412-DPC (Bankr. D. Ariz. May 8, 2020), Doc. 60. Plaintiff alleges that Debtor Star Mountain Resources, Inc. ("Debtor") used a subsidiary entity, Northern Zinc LLC, to fraudulently transfer the Balmat Zinc Mine and associated mining and processing equipment ("Balmat Assets") to the Titan Defendants to shield the Balmat

Assets from creditors. *Id.* at ¶¶ 106–19. Plaintiff seeks to pierce the corporate veil between Northern Zinc and Debtor to avoid the transfer. (Doc. 5 at 5–6.) Plaintiff's Motion for Partial Summary Judgment is presently pending in the Bankruptcy Court. (Doc. 5 at 6.) The Titan Defendants have now filed the present Motion to Withdraw the Reference, arguing the District Court ought to preside over the adversary proceeding itself because the Titan Defendants intend to exercise their Seventh Amendment rights and seek a jury trial. (Doc. 2.)

**DISCUSSION**

**I. Legal Standard**

28 U.S.C. § 157 states, "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). This District refers all bankruptcy cases to the Bankruptcy Court. *See* General Order 01-15 (June 29, 2001). However, district courts "may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

When determining whether cause to withdraw exists, "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d. Cir. 1993)).

**II. Analysis**

**A. Core vs. Non-Core**

In determining whether there is cause to withdraw, courts "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency or uniformity will turn." *In re Orion Pictures*, 4 F.3d at 1101 (cited approvingly by the Ninth Circuit in *Sec. Farms*, 124 F.3d at 1008). "Hearing core matters in a district court

could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues" and "may enter appropriate orders and judgments." *Id.* (internal quotation and citation omitted).

However, a determination that a claim is non-core does not necessarily mandate withdrawal because a bankruptcy court may also hear "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). Where a bankruptcy court hears a case under its "related to" jurisdiction, the bankruptcy court cannot issue a final decision on the case. The bankruptcy court instead

> shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

*Id.* "[A] civil proceeding is 'related to' bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate." *Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*, 205 B.R. 231, 237 (B.A.P. 9th Cir. 1997).

To determine whether a proceeding is core or non-core, courts look to see if the proceeding "is created by title 11 or . . . depends upon resolution of a substantial question of bankruptcy law." *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 219 (D. Haw. 2006) (citations omitted); *see also Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076-77 (9th Cir. 1991). "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy[,] it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

Additionally, bankruptcy courts lack constitutional authority to finally adjudicate a subset of statutorily defined core claims. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011). For instance, Section 157(b)(2)(H) expressly classifies actions to "determine, avoid, or recover fraudulent conveyances" as core claims, but bankruptcy courts may not render final

judgments as to those claims because doing so would violate Article III. 28 U.S.C. § 157(b)(2)(H); *see also Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 562 (9th Cir. 2012), *aff'd sub nom. Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014). These *Stern* claims are effectively treated like non-core claims: A bankruptcy court may hear the matter and issue proposed findings of fact and conclusions of law, subject to de novo review by a district court. *Arkison*, 573 U.S. at 36. If the parties consent, the bankruptcy court may still render final judgments as to both *Stern* and non-core claims. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674 (2015).

Here, Plaintiff seeks, *inter alia*, to revoke an allegedly fraudulent conveyance from Northern Zinc to the Titan Defendants. Central to its theory of the case is that Northern Zinc was at all times an alter ego of Star Mountain under Nevada law. (Doc. 2 at 28–30). As stated above, actions to revoke fraudulent conveyances against non-creditors are *Stern* claims and cannot be finally adjudicated in bankruptcy court. Further, the alter ego claim arises under state law, and is "one that could exist outside of bankruptcy." *In re Wood*, 825 F.2d at 97. However, Plaintiff's action is "related to" the underlying bankruptcy because the determination of whether the underlying conveyance may be avoided "could conceivably have any effect on the bankruptcy estate." *ACI-HDT Supply*, 205 B.R. at 237. Therefore, while the Bankruptcy Court lacks authority to issue a final judgment in this case, it has jurisdiction to hear Plaintiff's claims and to issue proposed findings of fact and conclusions of law to this Court on the alter ego issue. *See* 28 U.S.C. § 1334(b); 28 U.S.C. 157(c)(1).[1] Since the Titan Defendants assert their jury trial rights on the fraudulent conveyance issue, this Court will preside over a trial on that issue to the extent a jury trial is necessary to resolve disputed issues of fact.

[1] Further, the Titan Defendants have standing to move to withdraw the reference. Section 157(d) allows "any party" to the bankruptcy proceeding to seek withdrawal of the reference. 28 U.S.C. § 157(d). Plaintiff's argument that their Motion to Withdraw the Reference amounts to asserting a substantive defense on behalf of Northern Zinc is not well taken. The impetus for the Titan Defendants' motion is their desire to protect their own Seventh Amendment right to a jury trial.

**B. Consent to Bankruptcy Court Jurisdiction**

**i. Proof of Claim**

If a non-creditor submits a proof of claim against the bankruptcy estate or otherwise participates in the bankruptcy court's claims allowance process, it submits to the equitable jurisdiction of the bankruptcy court and waives its Seventh Amendment right to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989); *Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990). Here, the Titan Defendants did not file a formal proof of claim against the bankruptcy estate. For an informal proof of claim to exist, "there must have been presented, within the time limit . . . some written instrument which brings to the attention of the court the nature and amount of the claim." *Dicker v. Dye (In re Edelman)*, 237 B.R. 146, 154 (B.A.P. 9th Cir. 1999) (quoting *Cnty. of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards)*, 597 F.2d 181, 182 (9th Cir. 1979) (per curiam), *cert denied* 445 U.S. 915 (1980)). Plaintiff has not identified any actions taken by the Titan Defendants before the bar deadline of July 9, 2018 that would have put the Bankruptcy Court on notice as to the "nature and amount of the claim." *Id.* Therefore, the Titan Defendants have not filed any formal or informal proofs of claim against the bankruptcy estate.

**ii. Participation in Claims Allowance Process**

A non-creditor defendant in an adversary proceeding may also be deemed to have participated in the claims allowance process when they raise affirmative defenses that amount to an independent claim against the bankruptcy estate. *See Crum v. Blixseth (In re Big Springs Realty LLC)*, 430 B.R. 629, 632–36 (Bankr. D. Mont. 2010). Courts generally look to "the actual substance of the pleading" rather than "the technical title of a defense" to determine whether an affirmative defense raises such a claim. *Gecker v. Marathon Fin. Ins. Co. (In re Auto. Pros., Inc.)*, 389 B.R. 621, 629–30 (Bankr. N.D. Ill. 2008).

In *In re Big Springs Realty LLC*, the court found that the defendant's affirmative defense seeking setoff and recoupment asserted claims against the underlying bankruptcy estate. *In re Big Springs*, 430 B.R. at 636. The court contrasted affirmative defenses that sought to reduce the amount the defendant owed in relation to a specific transaction with

those defenses that sought to affirmatively recover from the debtor's estate by effectively asserting a claim. *Id.* at 634–35. There, the defendant's affirmative defense was drafted in such a way that the court could not "conclude that [the defendant's] affirmative defenses relate solely to the transactions raised by [the trustee] in her Complaint[,]" but rather appeared to be "an attempt to assert independent, affirmative claims against the Debtor and Debtor's bankruptcy estate." *Id.* at 635. Since the defendant "sought more than a fair accounting of the amount [the trustee] is entitled to under her claims," he "submitted himself to the equitable jurisdiction of this Court." *Id.* at 635-36; *see also Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*, 154 B.R. 581, 589 (D. Utah 1993).

The Titan Defendants raise several affirmative defenses in their Answer, including that (1) they are relieved of performance obligations under the Titan Purchase Agreement and Promissory Note due to breach by either the Trustee or Star Mountain, and (2) they are entitled to recoupment or set-off "or otherwise to reduce the amount of, any judgment . . . by at least the amount invested in the Balmat mine project after the Titan Sale." First Amended Answer of Titan Defendants to the Plan Trustee's Second Amended Complaint at ¶¶ 206, 209, *Parker v. Titan Mining Corp. et al. (In re Star Mountain Res., Inc.)*, No. 19-ap-412-DPC (Bankr. D. Ariz. Nov. 4, 2020), Doc. 104. Their first affirmative defense is directly related to Count V of the Trustee's complaint, which argues that the Titan Defendants breached the Titan Purchase Agreement and Promissory Note. *See* Second Amended Complaint at ¶ 164–75, *In re Star Mountain Res., Inc.*, No. 19-ap-412-DPC (Bankr. D. Ariz. May 8, 2020), Doc. 60. Since this affirmative defense seeks to excuse nonperformance as a defense to a count in the Second Amended Complaint, it relates to the amount the Trustee is entitled to under his claims, and is not an independent, affirmative claim against the debtor's estate.

Their second affirmative defense is similarly related to the "transactions raised by [the trustee] in [his] Complaint." *In re Big Springs*, 430 B.R. at 635. Looking to the substance of the affirmative defense rather than its formal label, the Titan Defendants argue that in the event the conveyance is avoided, any damages they owe should be offset by at

least the amount they invested in the Balmat Mine. Their position finds support in 11 U.S.C. § 550(e), which allows a good faith transferee of a property whose transfer was avoided to obtain a lien to secure the lesser of either (a) the cost of post-transfer improvements minus profits, or (b) "any increase in the value of such property" as a result of post-transfer improvement. 11 U.S.C. § 550(e)(1). Rather than asserting an independent claim against the Trustee, this affirmative defense seeks to ensure that the value of any post-transfer improvements is reflected in calculating any damages that may arise out of Count I of the Trustee's Second Amended Complaint. *See* Second Amended Complaint at ¶ 106–19, *In re Star Mountain Res., Inc.*, No. 19-ap-412-DPC (Bankr. D. Ariz. May 8, 2020), Doc. 60.

**iii. Appearance in Adversary Proceeding**

Finally, the Titan Defendants' appearance in the adversary proceeding does not amount to consent to the Bankruptcy Court's jurisdiction and a waiver of their jury trial rights because they have consistently objected, (Doc. 6-1), to the propriety of the Bankruptcy Court's jurisdiction. *Compare Akhoian Enters. Inc v. First-Citizens Bank & Tr. Co. (In re Akhoian Enters. Inc.)*, 630 B.R. 329, 338 (C.D. Cal. 2021) (finding no implied consent by active participation in adversary proceeding when litigants "vigorously object[ed] to the Bankruptcy Court's jurisdiction at every stage"), *with Field v. Hensaw (In re Henshaw)*, 569 B.R. 800, 803 (Bankr. D. Haw. 2017) (finding implied consent to bankruptcy court jurisdiction when defendants "litigated their counterclaim for over four years . . . and have never expressly objected to the entry of a final judgment by the bankruptcy court").

Therefore, the Titan Defendants have not consented to the Bankruptcy Court's jurisdiction nor have they waived their jury trial rights.

**C. Cause for Withdrawal**

A bankruptcy judge may only conduct a jury trial if specially designated to do so by the district court and with the express consent of all the parties. *See* 28 U.S.C. § 157(e). Consequently, a valid demand for a trial by jury may "have the effect of mandating

withdrawal to the District Court for trial." *Growe ex rel. Great Northern Paper, Inc. v. Bilodard Inc.*, 325 B.R. 490, 492 (D. Me. 2005). But "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court." *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007). "Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters," because only "by allowing the bankruptcy court to retain jurisdiction over the action until trial *is actually ready* do we ensure that our bankruptcy system is carried out." *Id.* at 787–88. Doing so allows the bankruptcy court to leverage its "unique knowledge of title 11 and familiarity with the actions before them," promoting judicial economy. *Id.*

In this case, the Bankruptcy Court already has experience with the issues and parties involved in this case. There is also a pending, unresolved motion for summary judgment in the adversary proceeding. Given these considerations, the Court declines to "effectively subvert" the bankruptcy system. Even if the Bankruptcy Court lacks authority to issue final judgments on the pending motion for partial summary judgment and will not be able to preside over any eventual jury trial, it is in the interest of judicial economy to allow the Bankruptcy Court to continue presiding over the adversary proceeding at this time. *See Piombo Corp. v. Castlerock Props. (In re Castlerock Props.)*, 781 F.2d 159, 161 (9th Cir. 1986) ("In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master."). Thus, although the Titan Defendants may be accorded the opportunity of a jury trial on any surviving claims when the case is sufficiently ripe, they have not shown that immediate withdrawal of the reference is necessary.

**CONCLUSION**

The Titan Defendants' request for a jury trial does not mandate withdrawal of the reference at this time.

Therefore,

**IT IS ORDERED** that the Motion to Withdraw the Reference of Adversary

Proceeding (Doc. 2) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action.

Dated this 4th day of November, 2021.

G. Murray Snow
Chief United States District Judge